STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2025 CJ 0622

STATE OF LOUISIANA IN THE INTEREST OF R.M.

Judgment Rendered:  **NOV 0 7 2025**

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of Washington
State of Louisiana
Docket No. J-23-81, Division: Juvenile

Honorable Scott Gardner, Judge Presiding

* * * * *

| | |
|---|---|
| Rebecca E. Henderson<br>Mandeville, LA | Counsel for Appellee,<br>R.M. – Minor Child |
| Kimberly E. DeBrock<br>Covington, LA | Counsel for Appellee,<br>State of Louisiana Department of<br>Children and Family Services |
| Linda S. Stadler<br>Slidell, LA | Counsel for Appellee,<br>L.M. – Father |
| John Thomas<br>Franklinton, LA | Counsel for Appellant,<br>R.H. – Mother |
| Annette Roach<br>Lake Charles, LA | |

* * * * *

**BEFORE:  THERIOT, PENZATO, AND BALFOUR, JJ.**

**BALFOUR, J.**

A mother appeals a judgment terminating her parental rights and certifying the minor child, R.M., for adoption.[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

R.M., born July 4, 2023, entered the State's custody on September 15, 2023, pursuant to an instanter order for removal. According to the affidavit in support of the instanter order, the Department of Children and Family Services (DCFS) received a report on September 6, 2023, of alleged "Neglect/Drug Affected Newborn." On September 21, 2023, the District Attorney for the 22nd Judicial District Court filed a child in need of care petition, asserting therein "the child is a victim of neglect." At birth, R.M. was transferred to another hospital because he suffered from withdrawal symptoms such as tremors, jitteriness, respiration and body heat regulation issues. The child's mother, R.H., and father, L.M., had known substance abuse issues, consistently failed drug screens, failed to comply with the case plan, and the DCFS believed that leaving R.M. in the care and control of his parents would result in an unreasonable risk of harm.[2]

At the adjudication hearing on October 5, 2023, R.H. and R.M.'s father, L.M., stipulated to continued custody without admitting to the allegations of the petition, and R.M. was adjudicated to be a child in need of care. At a disposition hearing on November 2, 2023, the trial court ordered that R.M. remain in the custody of the State and that the parties comply with the DCFS case plan with a goal of reunification.[3]

---

[1] The same April 3, 2025 judgment terminated the parental rights of the minor child's father; however, the father has not appealed. The judgment is final as it relates to termination of his parental rights. *See State in Interest of A.B.*, 2023-0655 (La. App. 1 Cir. 01/19/24), 383 So. 3d 933, 935 n. 2, *writ denied*, 2024-00221 (La. 03/07/24), 380 So. 3d 552.
[2] The trial court approved the placement of R.M. with the paternal aunt and uncle.
[3] L.M. was arrested on November 14, 2023.

The matter came for a case review hearing on March 21, 2024. R.M.'s custody was maintained with the State, and a permanency hearing was set for September 19, 2024. At that time, DCFS requested and was granted an additional three months due to the mother's case plan compliance and the reunification goal. At the September 19, 2024 permanency hearing, the case plan for R.M. was changed to adoption.

On February 20, 2025, DCFS filed a petition for termination of parental rights, requesting that R.H.'s and L.M.'s parental rights be terminated. In support thereof, DCFS alleged that neither parent had substantially complied with the court-approved case plan for the safe return of R.M. Specifically, DCFS alleged that R.H. failed to address her substance abuse and demonstrate consistent sobriety and compliance with treatment; R.H. tested positive for methamphetamines and amphetamines multiple times even after her child had been in custody a year; R.H. failed to attend treatment for over 30 days after being released from care; R.H. failed to demonstrate an ability to maintain consistent employment; R.H. failed to address her mental health issues; and R.H. failed to engage in the individual trauma therapy with the LSU Infant Team, which was crucial to her case management plan [4]when it began in November 2024. She acknowledged the negative consequences of her behavior, but struggled to modify the behavior.

The trial court held a hearing on the petition for termination of parental rights on March 6, 2025 and March 27, 2025. At the conclusion of the hearing, the trial court granted the motion to terminate parental rights, freeing R.M. for adoption. On

---

[4] The father did not appeal. Based on the record, L.M.'s actions demonstrated an intention to permanently avoid responsibility; failed to provide any financial contributions for R.M.'s care in excess of six months while R.M. remained in the State's custody; and he was incarcerated for a large portion of R.M.'s state custody. Due to his incarceration he was unable to provide a safe and stable home for his child. Prior to his incarceration, he was not actively cooperating with DCFS to comply with the case plan. (R. 165)

April 3, 2025 the trial court signed a judgment terminating the parental rights of both L.H. and L.M. and certifying R.M. for adoption.

R.H. appeals the judgment, contending the trial court erred in terminating her parental rights and in finding that termination was in R.M.'s best interests.

## LAW AND ANALYSIS

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. The purpose of an involuntary termination proceeding is "to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption." La. Ch. C. art. 1001. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. *State in Int. of C.J.*, 2019-1383 (La. App. 1 Cir. 02/21/20), 297 So. 3d 3, 7.

Louisiana Children's Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights of parents. Relevant hereto, Section (5) provides the following grounds for termination:

> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In order to terminate a person's parental rights, the court must find the State has established at least one of the statutory grounds contained in Article 1015 by clear and convincing evidence. *See* La. Ch.C. art. 1035(A); *See also State in Interest*

4

*of C.F.*, 2017-1054 (La. 12/06/17), 235 So. 3d 1066, 1072. Even upon finding the State has met its evidentiary burden, a court may not terminate parental rights unless it determines that to do so is in the child's best interest. *See* La. Ch. C. art. 1037(B).

Whether termination of parental rights is warranted is a question of fact, and a district court's factual determinations will not be set aside in the absence of manifest error. *State ex rel. K.G.*, 2002-2886, 841 So. 2d 759, 762 (La. 03/18/03). In applying the manifest error standard, an appellate court seeks to determine whether the record reflects the district court was clearly wrong. *State ex rel. H.A.B.*, 2010-1111 (La. 10/19/10), 49 So. 3d 345, 368. Under the manifest error standard, the appellate court does not decide whether the factfinder was right or wrong; rather, the appellate court is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. *State in Interest of H.R.*, 2021-1328 (La. App. 1 Cir. 02/25/22), 341 So. 3d 592, 598.

R.H. argues the trial court erred in concluding that the State presented sufficient and convincing evidence to warrant termination of her rights. R.H. further argues that the trial court committed manifest error in finding that termination of R.H.'s parental rights was in the best interest of the child, R.H. R.H. asks this Court to reverse the April 3, 2025 judgment, order that R.M. remain in the custody of the State, and order that further efforts be made towards reunification.

In written reasons signed on April 15, 2025, the trial court found that R.M. was taken into custody September 18, 2023, after being born drug exposed. The judgment also stated that both parents failed to adhere with the DCFS case plan requirements. R.H. struggled to secure safe and stable housing. Early on, R.H. was living with her grandparent and her uncle, a registered sex offender. During the pendency of the case, R.H. had several different employments, none of which lasted any significant time. Her lack of transportation made it difficult to stay employed.

5

She was dismissed from the court's treatment program, "Family Preservation Court," twice for ongoing drug use.

R.H. indicated she would seek treatment if she was promised the return of R.M., which was not possible due to the uncertainty of success with treatment. R.M. stopped payment of parental contributions in May 2024, and stopped participating in trauma therapy with the LSU infant team. Dr. Sebastian Del Corral-Winder,[5] recognized as an expert in clinical psychology, parenting, and trauma, testified that therapy was important to the case plan. In addition, Dr. Del Corral-Winder found that R.H.'s lack of a support system was not being addressed. Haley Thomas, the DPSC case manager, testified that there was no reasonable expectation of significant improvement in R.H.'s condition or conduct in the near future. The trial court terminated R.H.'s parental rights under La. Ch. C. art. 1015(5). The trial court recommended that R.M. be freed for adoption. Given the child's young age, the new family setting would give him the safe, stable environment that he needed.

At the termination hearing, Thomas testified that R.H.'s case plan for reunification required stable employment, stable housing, a drug abuse assessment, independent financial stability, ongoing communication, mental health therapy, and continuous visitation. Thomas confirmed that R.H. moved in with her grandmother and uncle. Her concern was that the uncle was a registered sex offender. At some point the uncle was incarcerated, leaving R.H. and her grandmother in the house, and at some point, she moved into a trailer. The grandmother was her only source of transportation. R.H. had a job at a call center, but her most recent employment was babysitting.

According to the case officer, R.H. had an issue staying drug-free. R.H. never provided DCFS proof that she had re-engaged with any kind of substance abuse treatment. She continued her relationship with L.M. for financial assistance,

---

[5] During the hearing, Dr. Sebastian Del Corral Winder is sometimes referred as Dr. Del Corral

6

borrowing significant amounts of money from him despite a history of domestic violence. DCFS felt it was not a safe option to communicate with L.M so she was encouraged to pay her own bills. R.H. requested trauma therapy and mental health help was requested by R.H., but she never engaged in therapy. Prior to the goal change of adoption, R.H. had great communication with DCFS and made all of her visits. When the goal changed to adoption, there was less communication. According to Thomas her mental health became an issue and she lost motivation.

Finally, the Thomas agreed that R.H. had not made any substantial improvement or progress that would cause the department to reconsider a termination of parental rights. She also stated that the proposed adoptive parents had been approved, and R.M. developed a bond with them. There was also a plan in place for the transition to the adopted parents.

The trial court found that R.H. failed to address the substance abuse and mental health issues central to her case plan while the child was in the State's custody. It further found that R.H. had not resolved her housing situation, nor had she obtained steady employment. In short, she had not made meaningful progress toward achieving stability.

R.H. argues that there was a reasonable expectation to continue the goal of reunification. R.H. points to the Court Appointed Special Advocate (CASA) representative that expressed that she "saw a bond; she saw engagement; she saw everything you would hope to see between a baby and his mother." However, there was other testimony by family members that expressed concern about R.H.'s sobriety and her associations with known drug users. The family members that were tasked with taking care of R.M. were concerned about their own age, and their ability to keep up with R.M.

According to the jurisprudence, "reformation" of a parent, for purposes of determining whether parental rights should be terminated, means more than mere

7

cooperation with agency authorities. A showing of a significant, substantial indication of reformation is required, such as altering or modifying in a significant way the behavior which served as a basis for the State's removal of the child from the home. *State in Interest. of BJ*, 1995-1915 (La. App. 1 Cir. 04/04/96), 672 So. 2d 342, 347, *writ denied*, 1996-1036 (La. 05/31/96), 674 So. 2d 264. In this case, while R.M. was in the State's custody for over a year, R.H. continued to use methamphetamines and failed to find adequate employment or housing. Under these circumstances, we find no manifest error in the trial court's finding that there is no reasonable expectation of significant improvement in her condition or conduct in the near future pursuant to La. Ch.C. art. 1015(5).

We next address appellant's argument that the trial court failed to make a specific finding that there was no reasonable expectation of significant improvement in the near future and further erred in September 2024 when it discontinued reunification plans and changed the goal to adoption. R.H. argues that once the change was made, DCFS and Dr. Winder did not reach out to R.H. on a regular basis. "Reasonable efforts" are defined by La. Ch.C. art. 603(26) as "the exercise of ordinary diligence and care by the department throughout the pendency of a case pursuant to the obligations imposed on the state by federal and state law to provide services and supports designed and intended ... to reunite families after separation, and to achieve safe permanency for children."

The trial court found, and R.H. admits, that DCFS directed R.H. towards the appropriate agencies to assist her in meeting her responsibilities and removing the impediments when the case plan goal was reunification. Despite these efforts, R.H. failed to comply with the case plan. The case plan goal remained reunification for more than a year before it was changed to adoption. While completing some items on the case plan, R.H. failed to show a change in her behavior. *See State in Int. of E.O.*, 2018-1093 (La. App. 1 Cir. 02/06/19), 272 So. 3d 552, 560. Furthermore, a

February 2024 report made by the LSU infant team advised that R.M. would be at a very high risk of re-experiencing neglect because R.H. appeared to have relapsed, had not built a healthy social support system, and had not fully addressed a previous traumatic experience. After considering the entire record, we find a reasonable factual basis exists for the trial court's findings. *See State ex rel. K.G.*, 2002-2886, 841 So. 2d 759, 762 (La. 03/18/03). Thus, we find no manifest error in the trial court's judgment terminating R.H.'s parental rights.

## CONCLUSION

For the foregoing reasons, the trial court's April 3, 2025 judgment terminating the parental rights of R.H. and certifying R.M. for adoption is affirmed. Costs of this appeal are assessed to the appellant, R.H.

**AFFIRMED.**